**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

**UNITED STATES OF AMERICA**

v.                                                                    Case No. 7:20-CR-41 (HL)

**ISAAC DONALD MASON**,

          Defendant.

**ORDER**

Before the Court is Defendant Isaac Donald Mason's Motion to Suppress
Evidence. (Doc. 45). This matter came before the Court for an evidentiary
hearing on September 14, 2021. At the conclusion of the hearing, Defendant
requested an opportunity to file a post-hearing brief following production of the
hearing transcript. Both Defendant and the Government have now submitted
their post-hearing briefs, and the motion is ripe for review. Upon consideration of
the testimony and evidence produced during the hearing, the Court **DENIES**
Defendant's Motion to Suppress.

**I.      BACKGROUND**

*Narcotics Investigation*

Waylon Chester is an investigator with the Lowndes County Sheriff's
Office. (Doc. 56, p. 5). Investigator Chester has worked in law enforcement for
just over ten years. (Id.). He began his career as a patrol officer and currently
works in narcotics investigations. (Id.).

Investigator Chester first became aware of Defendant Isaac Donald Mason in October 2019, when a cooperating source identified Defendant as his drug supplier. (Id. at p. 6). The Sheriff's Office developed the source following the recovery of narcotics during a traffic stop. (Id.). The source provided a telephone number for his supplier: (954) 955-4278. (Id.). The source knew the supplier as "D." (Id. at p. 6, 24). However, according to the cooperating source, "D" was in jail, and a black male, who stood over six feet tall, was heavy set, and had long hair, was filling in for "D." (Id. at p. 6-7, 24). The source further informed the officers that the substitute supplier resided at an address on Sundance Circle and drove a small, silver car. (Id. at p. 7). An independent investigation led officers to 3113 Sundance Circle and to Devon Mitchell, an inmate at the Lowndes County Jail. (Id. at p. 6, 22).

Investigator Chester began screening Devon Mitchell's jail calls. (Id. at p. 7). The investigator identified a call from September 29, 2019 between Mitchell and the telephone number provided by the cooperating source. (Id.). According to Investigator Chester, during the call, Mitchell spoke with another male voice about drug distribution. (Id.). Law enforcement officers also started surveilling the Sundance Circle address. (Id. at p. 9, 22). The officers observed a silver Honda fitting the description of the cooperating source but never saw any individual outside the residence. (Id.).

On November 13, 2019, Investigator Chester started communicating with the telephone number provided by the cooperating source. (Id. at p. 8). His first contact was via text message. (Id. at p. 23-24). Investigator Chester made an initial introduction but said that he was traveling out of town and would check back. (Id. at p. 24). Chester texted the number again on November 14th. (Id. at p. 23).

On November 18, 2019, Investigator Chester arranged to meet Defendant to purchase a "ball," or approximately three grams of cocaine, for $240.00. (Id. at p. 9, 24, 28). Officers identified Defendant, a tall, heavy set, black male with long hair, and his girlfriend, co-Defendant Kahleisha Cockfield, leaving the Sundance Circle residence together in the silver Honda. (Id. at p. 9, 23, 27). Officers followed Defendant and Cockfield to a known drug distribution house on the south side of Valdosta, Georgia. (Id. at p. 9). Defendant and Cockfield left after a few minutes and traveled toward Exit 16. (Id.).

Investigator Chester then received a call from Defendant. (Id.). Investigator Derrick Sorrell answered the call for Chester. (Id.). Defendant stated that he could not locate the motel where they were supposed to meet. (Id.). The officer provided Defendant with the correct address. (Id. at p. 10). Officers then observed Defendant leaving Exit 16 and proceeding toward Exit 11 and the Travelers Lodge, where he was to meet Investigator Chester. (Id.).

3

Defendant and Cockfield pulled into a nearby gas station. (Id.). Defendant placed another call to Investigator Chester. (Id.). Investigator Sorrell again answered the call and told Defendant he would be right out. (Id.). Defendant and Cockfield then traveled to the northeast corner of the motel. (Id.). As defendant pulled his car into a parking space, the officers initiated a "buy-bust." (Id.). The officers identified themselves and were outfitted in carrier vests clearly identifying them as members of the Lowndes County Sheriff's Office. (Id. at p. 11).

Defendant and Cockfield were detained without incident. (Id.). A search of Defendant revealed no contraband. (Id.). Investigator Chester testified that an odor of marijuana was coming from the car. (Id. at p. 12). Cockfield admitted to possessing marijuana, and officers located a quantity of marijuana packaged in individual baggies in her jacket pocket. (Id. p. 11, 12, 34). While Cockfield stated she was a marijuana user, Investigator Chester testified that Cockfield did not appear to be under the influence at the time of her arrest. (Id. at p. 34, 42). When asked about the Sundance Circle address, Cockfield confirmed that was her residence. (Id. at p. 11-12). She further informed the officers that there was marijuana in the home and provided consent for officers to search the residence. (Id. at p. 11, 34-35). One of the investigators at the scene issued a Miranda warning to Cockfield prior to her giving consent for the search. (Id. at p. 35).

Officers located no cocaine on either Defendant or Cockfield, nor did they find any cocaine during a search of the vehicle. (Id. at p. 29). When asked why

he was at the motel, Defendant stated he was there to determine who set up his brother, Devon Mitchell. (Id. at p. 30). Defendant was arrested and charged with use of a communication device and criminal intent to sell cocaine. (Id. at p. 15).

### Search of Home

Cockfield identified 3113-B Sundance Circle as her residence. (Id. at p. 12). She resided there with a roommate, Anthony Kohler. (Id.). Having obtained permission from Cockfield to search the premises, three officers were dispatched to the Sundance Circle address: William Neel, James Stokes, and Jaderis Victrum. (Id. at p. 12, 13). Upon arrival, Investigator Neel knocked on the door. (Id. at p. 12). Kohler answered. (Id. at p. 12, 36). Investigator Neel immediately detected the odor of marijuana. (Id.). Kohler admitted there was marijuana in the home. (Id.). The officers obtained permission to search Kohler's room where they located marijuana. (Id. at p. 13, 36-37).

A search of Cockfield's room uncovered more marijuana, cocaine powder, and a firearm. (Id. at p. 13, 37-38). Both the marijuana and cocaine were packaged in individual baggies. (Id. at p. 14). The cocaine, which was located inside a plastic baby formula container, was separated into four bags containing approximately half a gram apiece. (Id. at p. 38). The firearm was found on the closet shelf. (Id. at p. 39).

_Interview of Defendant_

Investigators Chester and Sorrell interviewed Defendant the following day, November 19, 2019, at the Lowndes County Jail. (Id. at p. 14-15). Investigator Chester issued a verbal _Miranda_ warning. (Id. at p. 15). Investigator Chester testified that it is not standard practice to sign a separate written _Miranda_ waiver. (Id. at p. 41). The investigator informed Defendant about the evidence located at Sundance Circle and indicated that the officer needed permission to speak with Defendant about those items. (Id. at p. 16). Investigator Sorrell gained rapport with Defendant, and Defendant ultimately agreed to speak. (Id. at p. 16-17). Defendant admitted that his DNA and fingerprints would be on the cocaine packaging and the firearm. (Id. at p. 17). He further divulged that he possessed the firearm during previous drug transactions. (Id.). The interview lasted approximately thirty-eight minutes. (Id.). The investigators recorded the interview using an Axon evidence voice recording application on a cellular phone. (Id. at p. 17, 40). The interview was then uploaded directly to the Lowndes County Sheriff's Office's evidence server. (Id. at p. 41).

## II.   DISCUSSION

Defendant's Motion to Suppress raises three challenges. First, Defendant argues that law enforcement officials lacked probable cause for his arrest on November 18, 2019. Next, Defendant contends that co-Defendant Kahleisha Cockfield's consent to search the Sundance Circle residence was not knowing

and voluntary. Finally, Defendant maintains that any statements he made to officers on November 19, 2019 should be suppressed because the underlying arrest was unconstitutional.

### A.    Arrest of Defendant

Defendant maintains that any evidence of criminal activity obtained by law enforcement officers subsequent to his arrest should be suppressed because the officers lacked probable cause for his arrest. Investigator Chester and other officials with the Lowndes County Sheriff's Office conducted an investigation that led them to Defendant as a potential narcotics supplier. Investigator Chester arranged to meet Defendant to purchase a quantity of cocaine. At the designated meeting time and place, law enforcement officers conducted a "buy-bust." The officers located no cocaine during the search of Defendant's person or vehicle. The officers arrested Defendant and charged him with use of a communication device and criminal intent to sell cocaine. Defendant argues that because he had no drugs on his person, and because he provided the officers with a non-criminal reason for his presence at the motel, the officers consequently lacked probable cause for his arrest.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. An arrest does not violate the Fourth Amendment provided an officer has probable cause for the arrest. See Lee v.

Ferrero, 284 F.3d 1188, 1194-95 (11th Cir. 2002). Whether probable cause exists is evaluated based on the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 233 (1983). "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks and citation omitted). "[P]robable cause . . . is a doctrine of reasonable probability and not certainty." United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995); see also Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (Probable cause "must be judged not with clinical detachment but with a common sense view to the realities of normal life.") (internal quotation marks and citation omitted). Thus, "[a]lthough probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." Lee, 284 F.3d at 1195 (internal quotation marks and citations omitted) (alteration in original).

The totality of the circumstances here reasonably led officers to believe Defendant was engaged, or intended to engage, in criminal activity. The cooperating source provided investigators with a telephone number and physical description for a drug supplier standing in for his usual dealer, "D." The source

8

additionally identified the type of vehicle driven by the supplier along with a general location of his residence. Investigators were able to utilize this information to identify Devon Mitchell, who was being detained at the Lowndes County Jail, and to confirm that the cellular telephone number registered to Mitchell was still being used outside of the jail to conduct Mitchell's drug distribution business.

Defendant is correct in stating that at this point in their investigation, the investigators did not know Defendant's identity and did not know who was authorized to reside at the Sundance Circle address provided by the cooperating source. Investigators also had not observed any drug transactions on the premises. However, the investigators did know that someone was using Devon Mitchell's cell phone number to arrange drug sales. Investigator Chester began texting the number on November 13, 2019, to establish a relationship with the supplier and to express interest in a purchase. Over the next several days, Investigator Chester continued texting the number. Then, on November 18, 2019, he arranged to buy a "ball," or approximately three grams of cocaine. Investigator Chester and the seller agreed on a purchase price of $240.00 and arranged to meet at a local motel.

While Investigators Chester and Sorrell headed toward the meeting location, other officers surveilled the Sundance Circle address. The officers observed a male subject fitting the description provided by the cooperating

9

source and a female subject leave the residence and enter a vehicle also meeting the description given by the source. The two traveled to another known drug distribution site before heading in the direction of the motel where they were scheduled to meet the investigators. During this time, the investigators received a telephone call from a male caller confirming the address of the hotel.

The information obtained from the cooperating source, which law enforcement officers corroborated through their independent investigation, provided probable cause for Defendant's arrest for criminal intent to sell cocaine and unlawful use of a communication device. Under Georgia law, "[I]t is unlawful for any person to manufacture, deliver, distribute, administer, sell, or possess with intent to distribute any controlled substance." O.C.G.A. § 16-13-30. Under the circumstances, the investigators had reason to believe that Defendant was engaged in cocaine distribution. The fact that Defendant did not have cocaine on his person and claimed he never intended to sell cocaine has no bearing on the analysis. The facts and circumstances available to the officers at the time of the "buy-bust" would have led any reasonable officer to believe that Defendant intended to engage in drug distribution.

Even if the investigators lacked probable cause to arrest Defendant for criminal intent to distribute cocaine, investigators had probable cause to arrest Defendant for unlawful use of a communication device. Georgia law criminalizes the use of a telephone to engage in drug distribution:

10

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony.

O.C.G.A. § 16-13-32.3(a). "Communication facility" includes the telephone. Id. Here, Defendant engaged in text communications with law enforcement officers for the sale of a quantity of cocaine. The officers accordingly were justified in arresting Defendant for commission of this offense. Defendant's motion to suppress any evidence obtained incident to his arrest accordingly is **DENIED**.

### B.    Search of Sundance Circle

Defendant moves the Court to suppress any evidence obtained during the search of the Sundance Circle residence. Defendant argues that any consent obtained from Kahleisha Cockfield to search the residence was not voluntary. Consequently, the search was illegal. The evidence does not support Defendant's position.

As a general principle, a search conducted absent a warrant and probable cause is per se unreasonable under the Fourth Amendment. See Katz v. United States, 389 U.S. 347, 357 (1967). A well-settled exception to this rule arises when the search is conducted pursuant to voluntary consent. See Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (citing Davis v. United States, 328 U.S. 582, 593-94 (1946); Zap v. United States, 328 U.S. 624, 630 (1946)). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d

11

355, 360 (11th Cir. 1989) (citing <u>Culombe v. Connecticut</u>, 367 U.S. 568, 602 (1961)). "In examining all the surrounding circumstances to determines if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." <u>Schneckloth</u>, 412 U.S. at 229. "The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." <u>United States v. Blake</u>, 888 F.2d 795, 798 (11th Cir. 1989).

There is no neat, talismanic definition for voluntary consent. <u>Id.</u> The inquiry must be conducted on a case-by case basis. <u>Id.</u> (citing <u>Schneckloth</u>, 412 U.S. at 224-25). The Eleventh Circuit has identified a non-exhaustive list of factors a court should consider when assessing whether consent was voluntary:

> voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.

<u>United States v. Chemaly</u>, 741 F.2d 1346, 1352 (11th Cir. 1984).

Defendant suggests that Cockfield's consent was not voluntarily based in part on the presence of at least six law enforcement officers at the time of the "buy-bust." However, there is no evidence in this case that the officers threatened force or violence or in any way intimidated Cockfield into providing consent to

12

search her residence. Investigator Chester's testimony suggests a contrary conclusion. According to Chester, Cockfield was immediately cooperative with the police officers. She admitted to possessing marijuana and divulged that more marijuana could be found in her home. The fact that the interaction took place at a motel parking lot and not directly outside Cockfield's home also suggests to the Court that Cockfield was acting of her own accord and not under the influence of police pressure when she offered the officers access to her home.

Defendant also emphasizes that the officers did not provide Cockfield with a written Miranda waiver informing her of her rights. Defendant has pointed to no authority requiring that a Miranda waiver be written. Miranda warnings are "not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." Michigan v. Tucker, 417 U.S. 433, 444 (1974). "Reviewing courts therefore need not examine Miranda warnings as if construing a will or defining the terms of an easement." Duckworth v. Eagan, 492 U.S. 195, 203 (1989). Courts simply must inquire whether the warning reasonably conveyed a suspect's rights as required by Miranda. Id. (quoting California v. Prysock, 453 U.S. 355, 361 (1981) (explaining that "no talismanic incantation [is] required to satisfy its strictures"). The verbal Miranda warning given to Cockfield accordingly was sufficient to advise her of her constitutional rights.

13

Defendant's argument that Cockfield did not knowingly consent to a search because the officers failed to inform her of her right to refuse consent is equally unavailing. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need no establish such knowledge as the *sine qua non* of an effective consent." Schneckloth, 412 U.S. at 227.

Defendant's final argument is that the officers did not thoroughly probe whether Cockfield was under the influence of marijuana at the time of her arrest. Cockfield admitted to the officers that she was a regular user of marijuana. Investigator Chester also testified that he could smell marijuana coming from the vehicle in which Cockfield had been traveling. Yet the officers never inquired whether Cockfield had been smoking marijuana prior to her arrest. Defendant suggests that the officers deliberately avoided asking the question so as not to undermine any consent given by Cockfield. Whether Cockfield had ingested drugs at any time preceding her arrest is not part of the evidence. What is part of the record is Investigator Chester's testimony that Cockfield did not appear under the influence. Defendant has presented no evidence to undermine the investigator's credibility or to otherwise call Cockfield's sobriety into question.

Based on the totality of the circumstances, the Court concludes that the Government has met its burden of establishing that Cockfield's consent was both knowing and voluntary. Defendant's motion to suppress Cockfield's consent and the fruits of the search of the Sundance Circle residence is **DENIED**.

14

### C.    Custodial Statements

Defendant criticizes the investigators' verbal rather than written Miranda warning and questions their practice to produce an audio but not a video recording of custodial interrogations. However, Defendant does not otherwise question the constitutionality of the investigators' November 19, 2019, interview of Defendant. Rather, Defendant submits that his custodial statements should be suppressed because the officers lacked probable cause for his arrest. As established, there was probable cause for Defendant's arrest. Defendant's motion to suppress his custodial statements on this basis is therefore **DENIED**.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 45) is **DENIED**.

**SO ORDERED**, this 28th day of December, 2021.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks

15